UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL AKOUT AYUEN,

Petitioner,

v.

MATTHEW PUTRA et al.,

Respondents.
______________________________/

CASE NO. 1:26-cv-02365

HON. ROBERT J. JONKER

**<u>OPINION</u>**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1). For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**BACKGROUND**

Petitioner is citizen of Sudan. (Wynns Decl., ECF No. 6-1, PageID.51). He entered the United States as a refugee on December 18, 2000. (*Id.*) On February 26, 2003, Petitioner's application to adjust status was approved. (*Id.*). Two years later, Petitioner was arrested for assault with a dangerous weapon. (*Id.*) On January 8, 2008, Petitioner was convicted of assault and battery. (*Id.* at PageID.52.) On April 30, 2008, an immigration judge ordered Petitioner removed but also granted Petitioner's request to withhold the removal in accordance with the Convention Against Torture. (*Id.*) On May 2, 2008, Petitioner was released on an order of supervision. (*Id.*) On November 14, 2024, Petitioner was arrested for assault and fourth-degree child abuse. (*Id.*) On February 12, 2026, Petitioner was arrested when he reported for one of the check-in appointments that he is required to attend under his order of supervision. (*Id.*)

Since taking Petitioner into custody on December 9, 2025, the Immigration and Custom Enforcement's Enforcement and Removal Office (ERO) has been attempting to effectuate his removal. (*Id.* at PageID.53). ERO has also been conducting periodic reviews to determine if Petitioners post-removal confinement should continue. (*Id.*) At both his 90-day and 180-day reviews, ERO concluded that Petitioner should continue to be held in detention. (*Id.*)

A deportation and detention officer from ERO's Headquarters of Removal and International Operations (HQ RIO) is currently tracking this case as a third-country removal and is actively working with the Department of Homeland Security (DHS) to find a third country to which Petitioner can be removed. (*Id.*)

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, among other things, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.18). In an order entered on August 25, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5). Respondents filed their response on August 28, 2026 (ECF No. 6), and Petitioner filed his reply (ECF No. 7) on September 1, 2026.

**HABEAS CORPUS LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). 8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed. 533 U.S. at 682. In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699. Therefore, the Court concluded that the removal itself must be reasonably foreseeable to fall within post-removal-order detention authorized by the statute. *Id.* The Court indicated that there was no specific point in time at which the detention became constitutionally impermissible, and that the allowable period would vary from case to case. *Id.* Still, to assist the lower courts in making the difficult judgment calls about the lawfulness of detention, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701. Even after six months , though, the

Court made clear that the detention may continue unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.* Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has not provided any evidence to show that his removal is not reasonably foreseeable. By contrast, the government has provided evidence showing the removal is proceeding. Specifically, the government has provided a sworn affidavit indicating that HR RIO is actively exploring third country removal options for Petitioner. Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701. Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode

the reasonableness of continued detention. *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation. An immigration official has testified that the government remains in active discussions with a third country to coordinate Petitioner's removal. Although nearly six months have passed since ICE Headquarters provided that update, such a length of time is not unreasonably long for negotiating and coordinating removal to a third country. *See Abdalla*, 2017 WL 345731, at *4 (finding continued detention reasonable where the Government anticipated progress in the near future and no country had declined repatriation).

Moreover, under the circumstances of this case, the extended detention is—at least for now—still justified for at least two reasons. First, the fact that Petitioner's home country is experiencing a brutal civil war is at least partly to blame for the delay. According to the Global Conflict Tracker created and maintained by the Council on Foreign Relations, the conflict in Sudan that began in 2023 has grown into the world's worst current humanitarian disaster. *See Civil War in Sudan*, COUNCIL ON FOREIGN RELATIONS: GLOBAL CONFLICT TRACKER (Aug. 17, 2026), https://www.cfr.org/global-conflict-tracker/conflict/power-struggle-sudan [https://perma.cc/2B4A-X6Y6]. Moreover, according to the same tracker, the conflict is growing worse. *Id.* It is not surprising that it takes longer to remove a person whose home country is in the midst of civil war. As current government efforts demonstrate, it may even be necessary to seek a willing third country, which also takes time.

The second reason that an extended detention is still justified is because that detention is due, in no small part, to Petitioner's actions. Were it not for Petitioner's extensive problems with

law enforcement, he may have been released at either his 90-day or 180-day post-custody reviews. The government reports a steady stream of arrests and at least one conviction. The arrests include one for assault and child abuse in November of 2024. This is not the profile of an alien subject to a final order of removal who should reasonably expect to live in the community pending removal. That being said, Respondents cannot simply continue to assert indefinitely that they are working on finding a third country to which Petitioner can be removed. If the detention continues to be prolonged, Respondents will need to show increasingly persuasive evidence to convince the Court that Petitioner's removal is, in fact, reasonably foreseeable.

At this point in time, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future. Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: September 8, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge